UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LUCILE J. BRADLEY, individually; | ) | CIV. 09-5032-KES |
| RODNEY J. BRADLEY, individually; | ) | |
| LUCILE J. BRADLEY, as personal | ) | |
| representative of the estate of | ) | |
| Mark E. Bradley; | ) | |
| LUCILE J. BRADLEY, | ) | |
| RODNEY J. BRADLEY, and | ) | |
| KERRIE E. APPLEGATE, as | ) | |
| co-trustees of the Mark E. Bradley | ) | |
| Revocable Trust, | ) | ORDER DENYING |
| | ) | MOTION TO DISMISS |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MDC CREDIT CORPORATION, | ) | |
| f/k/a Midcoast Credit Corporation, | ) | |
| a New York corporation; and | ) | |
| PREMIUM ACQUISITIONS, INC., | ) | |
| f/k/a Midcoast Acquisition | ) | |
| Corporation, a Florida corporation, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs, Lucile J. Bradley; Rodney J. Bradley; Lucile J. Bradley, as personal representative of the Estate of Mark E. Bradley; and Lucile J. Bradley, Rodney J. Bradley and Kerrie E. Applegate, as co-trustees of the Mark E. Bradley Revocable Trust, (the Bradleys), filed a complaint against defendants MDC Credit Corporation (MCC) and Premium Acquisitions, Inc., formerly known as Midcoast Acquisitions (MAC), alleging breach of a guaranty agreement entered into by defendants. Defendants move to

dismiss the action for lack of personal jurisdiction. Plaintiffs oppose the motion. The motion is denied.

## FACTUAL BACKGROUND

Lucille and Mark Bradley with their son, Rodney, owned MB Enterprises, Inc., f/k/a/ PortaStorage, Inc. (MBE). (Comp. ¶ 3.) MBE was organized in South Dakota, and its business was located in Sturgis, South Dakota. (Comp. ¶¶ 3, 4.) All plaintiffs reside in Sturgis, South Dakota. (Comp. ¶ 4.)

In late 2003, Rodney met a group of individuals representing an entity known as "MidCoast." (Comp. ¶ 7.) These individuals repeatedly contacted him by telephone and email soliciting the purchase of the Bradleys' family-owned business, MBE. (Comp. ¶ 7.) As a result, the Bradleys negotiated a sale of their MBE stock to a company called PST Investments, LLC ("PST"). (Comp. ¶ 7.) Defendant Premium Acquisitions, Inc., formerly known as MidCoast Acquisitions Corporation ("MAC"), was the sole owner of PST. (Comp. at Ex. B, second recital.) Defendant MDC Credit Corporation, formerly known as MidCoast Credit Corp. ("MCC") is affiliated with MAC. (Comp. at Ex. B, second recital.) Michael Bernstein was the president of PST, MAC, and MDC. (Comp. ¶¶ 5, 6; Complaint at Ex. A, at signature page.)

On January 30, 2004, PST and the Bradleys entered into a Share Purchase Agreement, and PST agreed to pay just over $2.67 million to the Bradleys for the purchase of their MBE stock. (Comp. at Ex. A, § 1.2.) The

2

Share Purchase Agreement stated, "The Purchaser and the Company shall file all Federal and state income tax returns related to the Deferred Tax Liability on a timely basis, including extensions, and pay or cause to be paid the Deferred Tax Liability to the extent the Deferred Tax Liability is due given the Company's post-closing business activities." ((Comp. at Ex. A, § 3.4)

The Deferred Tax Liability amounted to approximately $1.3 million. (Comp. at Ex. A, § 2.18.) The Share Purchase Agreement also stated that PST would indemnify the Bradleys for any damages they might incur should PST fail to discharge the Deferred Tax Liability when due. (Comp. at Ex. A, § 9.2(c).) The Share Purchase Agreement was signed on January 30, 2004. (Comp. at Ex. A, Introduction.)

The parties also signed a Guaranty Agreement ("Guaranty") on January 30, 2004. (Comp. at Ex. B, Introduction.) The Guaranty recites that PST purchased all of the issued and outstanding stock of a South Dakota corporation pursuant to the Share Purchase Agreement between PST and the Bradleys. (Comp. at Ex. B, first recital.) The Guaranty also indicates that MAC was an entity affiliated with MCC and that MAC is the sole member of PST. (Comp. at Ex. B, second recital.) Further, the Guaranty states that, "As an inducement for Purchaser and Sellers to enter into the Share Purchase Agreement and for other good and value consideration, the receipt and sufficiency of which are hereby

3

acknowledged: Guarantors hereby unconditionally and irrevocably guarantee . . . all of Purchaser's obligations." (Ex. B, preamble to § 1.)

In late 2007 or early 2008, the IRS sent a Notice of Deficiency to the Bradleys' counsel indicating that MBE's taxes, which were in the amount of $1,360,220 due March 31, 2004, had not been paid. (Comp. ¶ 14.) Additionally, the notice set forth a penalty in the amount of $544,088 for a total of nearly $2 million due to the IRS. (Comp. ¶ 14.) The IRS indicated to the Bradleys that PST had not filed a timely tax court petition in response to the Notice of Deficiency and had not paid the tax or penalties. (Comp. ¶ 14.) The IRS commenced proceedings with respect to the Bradleys for payment of tax, penalties, and interest. (Comp. ¶ 15.)

The Bradleys served notice and made a demand to PST, MCC, and MAC for payment and provisions pursuant to the Share Purchase Agreement and Guaranty. (Comp. ¶ 16.) The Bradleys have been unable to collect from PST. MCC and MAC have made representations that PST no longer exists. (Comp. ¶ 18.) MCC and MAC have refused to perform under the Share Purchase Agreement and Guaranty, in response to the Bradleys' demands. (Comp. ¶ 16.)

**STANDARD OF REVIEW**

Plaintiffs, as the party seeking to establish the court's personal jurisdiction over defendants, bear the burden of proof to establish jurisdiction by a preponderance of the evidence. See Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Gould v. P.T. Krakatau Steel, 957 F.2d

4

573, 575 (8th Cir. 1992). To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003) (quoting Falkirk Min. Co. V. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990)). Because this court is relying on the pleadings and affidavits of the parties, it must view the facts in the light most favorable to plaintiffs, the nonmoving parties and resolve all factual conflicts in favor of the plaintiffs. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

## DISCUSSION

In determining whether the court has personal jurisdiction over a non-resident defendant, the court must determine whether jurisdiction is proper under the long-arm statute of the forum state, and also whether exercising jurisdiction over the non-resident defendant comports with the Due Process Clause. Oriental Trading Co. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001) (quoting Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991)). Under South Dakota's long-arm statute, a person may become subject to jurisdiction in South Dakota by "the transaction of any business within the state," "commencing or participating in negotiations, mediation, arbitration or litigation involving subject matter located in whole or in part within the state," or by "commission of any act, the basis of which is not inconsistent with the Constitution of [South Dakota] or with the Constitution of the United States." SDCL 15-7-2(1), (10) and (14). South

5

Dakota applies its long-arm statute to the fullest extent permissible under due process. Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 921 (8th Cir. 1995) (citing Ventling v. Kraft, 161 N.W.2d 29, 34 (S.D. 1968)). As a result, the key question becomes whether the exercise of personal jurisdiction would comport with the due process clause. Oriental Trading Co., 236 F.3d at 943.

In order for a court to exercise personal jurisdiction over a non-resident defendant, the defendant must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). Sufficient minimum contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 296, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). This " 'fair warning' requirement is satisfied if the defendant has 'purposely directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal citations omitted); see also Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) (finding that there must be "some act by which the defendant purposely avails itself of the privileges of

conducting activities within the forum State."). "[A] defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King Corp., 471 U.S. at 475.

The Eighth Circuit has identified five specific factors for courts to consider in determining whether the exercise of jurisdiction comports with the Due Process Clause:

> (1) the nature and quality of the contacts with the forum state;
> (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

Epps, 327 F.3d at 648. The first three factors are the most important and because they are closely interrelated, the court may consider them together. Northrup King Co. v. Compania Productora Semillas, 51 F.3d 1383, 1388 (8th Cir. 1995). These factors are concerned with whether the defendants have minimum contacts with the forum state that justify the court exercising personal jurisdiction. The other two factors are related to public policy interests.

## I. Minimum Contacts Factors

In order to determine whether the court has personal jurisdiction over defendants, the court must consider whether defendants have minimum contacts with the state of South Dakota. More specifically, the court must examine the first three jurisdictional factors, which include the nature and quality of contacts between defendants and the forum state; the quantity of

contacts between defendants and the forum state; and the relation of contact between defendants and the forum state to the cause of action. Defendants argue that they have not engaged in sufficient minimum contacts in South Dakota such that the court's exercise of jurisdiction would comport with due process. Defendants contend that they are not South Dakota entities, are not currently registered to do business in South Dakota, do not conduct business in South Dakota, and do not have an office in South Dakota. Defendants also argue that the fact that they signed a guaranty agreement and that they are shareholders in PST is insufficient to establish jurisdiction.

Plaintiffs respond that the South Dakota court does have jurisdiction because defendants purposefully directed their actions toward South Dakota. More specifically, plaintiffs argue that defendants signed a guaranty that induced the underlying contract, the underlying contract would establish jurisdiction over PST, and in signing the guaranty defendants could have reasonably expected to be haled into court in South Dakota. Plaintiffs also argue that because defendants are companies directly related to PST, this court has personal jurisdiction over defendants.

The Eighth Circuit has determined that non-resident guarantors of a contractual obligation have not had sufficient contact with a forum state to confer jurisdiction under certain circumstances. Arkansas Rice Growers Cooperative Ass'n v. Alchemy Indus., Inc., 797 F.2d 565 (8th Cir. 1986). In that case, the plaintiff, a farmers' cooperative, entered into a contract with

8

Alchemy Industries, Inc. ("Alchemy") for the construction of a factory, which would burn rice hulls. The defendants included Alchemy and individual defendants who had personally guaranteed the construction contract. Id. at 573. After trial, the district court found that the defendants had breached the construction contract and that the individual defendants had given guarantees to the plaintiff that were still in effect. Id. at 567.

The Eighth Circuit reviewed the district court's exercise of personal jurisdiction over the individual defendants, who had guaranteed the underlying contract. Id. at 566. The court found that "[t]he mere fact that the individual defendants guaranteed an obligation to an Arkansas corporation [did] not subject the guarantors to jurisdiction in Arkansas." Id. at 572. The court explained that while the identity of Alchemy, Structural Industries, which was the corporation that initiated negotiations between the plaintiff and Alchemy, and individual guarantors overlapped to some degree, Alchemy and Structural Industries were not identical. Id. at 573. The court determined that "[t]he guarantors' status as shareholders in Alchemy, the debtor corporation, or the more remote connection between some of the guarantors and Structural [did not] establish the minimum contacts between the guarantors and Arkansas necessary to satisfy due process." Id.

Additionally, the court noted that the defendants were found to have entered into the construction and marketing contracts without inducement

9

by the guaranty contracts because the construction contracts with Alchemy were agreed upon and signed months before the guaranty contracts were even discussed. Id. The Eighth Circuit found that although the guarantors stood to profit if the construction contract—the performance of which they guaranteed—was successful, this alone was not enough to establish personal jurisdiction. Id.

The court further recognized that in cases in which courts have asserted jurisdiction over non-resident guarantors, "there has been [1] substantive identity of the guarantors and the corporation whose obligation they guarantee, [2] evidence that the beneficiary of the guarantee contract would not have entered into the transaction without the guarantees of specific individuals, or [3] a provision in the guarantee contract or the underlying contract stating that the law of the forum state would control." Id. at 573-74. In making such an observation, the Eighth Circuit relied in part on National Can Corp. v. K Beverage Co., 674 F.2d 1134 (6th Cir. 1982).

In National Can, the Sixth Circuit found that the exercise of personal jurisdiction over individual non-resident guarantors was proper where defendants were shareholders in the corporation whose obligations they guaranteed, and the plaintiff provided evidence that the guaranty induced the underlying contract. Id. at 1138. Significantly, the Eighth Circuit

recognized that in National Can, the Sixth Circuit determined that because the first two factors were satisfied, the court could properly assert personal jurisdiction over non-resident guarantors. Id.

Based on the Eighth Circuit's precedent in Arkansas Rice Growers and its reliance on National Can, the court will examine the factors articulated in Arkansas Rice Growers to determine whether it has personal jurisdiction over defendants in this case, namely whether there is evidence: of substantive identity of the guarantors and the corporation whose obligation they guarantee, of inducement by the guarantors, or of a contractual provision stating the law of the forum state controls.

First, the court will examine whether the guaranty in this case served as inducement for the underlying contract. The Guaranty Agreement, binding defendants to the indemnity obligations of PST, was signed the same day as the Share Purchase Agreement. (Complaint at Ex. B, preamble to § 1.) Unlike the parties in Arkansas Rice Growers who signed a guaranty at a much later date than the underlying contract, MAC, MCC, and plaintiffs signed the guaranty the same day that PST and plaintiffs signed the Share Purchase Agreement. In fact, the same representative of MAC, MCC, and PST signed both documents. Additionally, the guaranty agreement specifically states, "Whereas, Sellers are willing to enter into and consummate the transaction contemplated by the Share Purchase

11

Agreement in consideration of Guarantors issuing this Guaranty." (Complaint at Ex. B.) Such facts indicate that plaintiffs required the guaranty of MCC and MAC as a prerequisite to the sale of company shares to PST.

Second, the court will consider the substantive identity between PST, which was the corporation signing the Share Purchase Agreement, and MAC and MCC, which were the corporations signing the Guaranty Agreement. MAC was the sole owner of PST, establishing full and complete identity between MAC and PST. This supports the court's exercise of jurisdiction over MAC, because MAC meets both the inducement and substantive identity factors. The court determines that substantive identity strongly supports the exercise of jurisdiction over MCC.

As for MCC, plaintiffs contend that MCC and PST are affiliated companies and have the same president. Viewing this allegation and all reasonable inferences in the light most favorable to plaintiffs, this evidence may be sufficient to show substantive identity between MCC and PST that would support the exercise of personal jurisdiction over MCC.

Third, the court considers governing law provisions within the agreements. The Share Purchase Agreement (Ex. A § 10.4) denotes that Florida law will govern it and other attached exhibits such as the guaranty. The provision is not a forum selection provision, but rather is a choice of

laws provision, which indicates that Florida law is the law that applies to any disputes between the parties to the contracts. The guaranty agreement, however, clearly shows that MCC and MAC as guarantors knew that the business they were assisting in purchasing was located in South Dakota. The guaranty agreement, in the second paragraph, identified the company being purchased as "a South Dakota corporation." "Signing a personal guaranty for a [South Dakota] business in which one has an economic interest is the sort of 'conduct and connection with the forum State' that makes it reasonable to 'anticipate being haled into court there' when the underlying contract is breached." National Can, 674 F.2d at 1138.

In analyzing the three factors together, the court finds that with respect to MAC, the inducement and identity factors, when considered together, demonstrate that MAC had sufficient contact with South Dakota through the guaranty agreement, which constitutes a substantial connection with the state through the nature and quality of that contact. Because the nature and quality of the guaranty agreement is substantial, this single instance of contact with South Dakota can qualify as contact sufficient to merit personal jurisdiction.

With respect to MCC, it is not as clear at this time whether the guaranty agreement constitutes a substantive connection between MCC and the state of South Dakota. MCC's guaranty served as inducement for the

underlying Share Purchase Agreement in the same manner that MAC's guaranty served as inducement. And viewing the facts in the light most favorable to the plaintiffs and all reasonable inferences that can be drawn therefrom, the court finds that the affiliation between MCC and PST is sufficient to make a prima facie showing of substantive identity. As such, the court will exercise personal jurisdiction over MCC and allow discovery to be conducted. If discovery into the affiliation between MCC and PST indicates no substantive identity between MCC and PST, MCC can then move for summary judgment on this issue.

## II.     Public Policy Factors

The fourth jurisdictional factor, the interest of the forum state in providing a forum for its residents, supports the exercise of personal jurisdiction over defendants. South Dakota has an interest in protecting its residents from alleged breaches of contract by non-resident parties, including guarantors. Here, South Dakota has an interest in providing the Bradleys—South Dakota residents—a forum to litigate claims arising out of a guaranty agreement against MAC and MCC. This factor favors the exercise of personal jurisdiction over defendants.

The fifth and final jurisdictional factor, the convenience of the parties, slightly weighs in favor of exercising jurisdiction over defendants. Plaintiffs are three individuals representing themselves in their own capacity and as representatives of a trust and an estate whereas defendants are

14

corporations. The burden of litigating outside of the resident state is likely greater for an individual than for a corporation. See Gross v. British Broad. Corp., 386 F.3d 224, 233 (2d Cir. 2004) (stating that "the burden of litigating abroad is likely a greater obstacle to an individual than to a large business corporation"). Further, a plaintiff is normally entitled to select the forum in which he or she will litigate. See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1389 (8th Cir. 1995). Litigation between citizens of different states will almost always result in inconvenience to one party or the other. See id. Accordingly, this factor slightly favors exercising jurisdiction over defendants.

## CONCLUSION

Having considered the relevant jurisdictional factors and the requirements in relation to minimum contacts, the court concludes that plaintiffs have made a prima facie showing that South Dakota courts have personal jurisdiction over MAC and MCC. Accordingly, it is hereby

ORDERED that defendants' motion to dismiss for lack of personal jurisdiction (Docket 19) is denied.

Dated August 26, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE.